IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JEFFERY G. DOUGLAS,                  )
                                     )
        Plaintiff,                   )
                                     )
VS.                                  )          No. 14-1302-JDT-egb
                                     )
CHRISTI GREGORY, ET AL.,             )
                                     )
        Defendants.                  )

_____

ORDER TO MODIFY THE DOCKET, ADDRESSING PENDING MOTIONS,
DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

_____

        On November 4, 2014, Plaintiff Jeffery G. Douglas, Tennessee Department of

Correction ("TDOC") prisoner number 467106, an inmate at the Northwest Correctional

Complex ("NWCX") in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42

U.S.C. § 1983 (ECF No. 1), accompanied by a motion seeking leave to proceed *in forma*

*pauperis* (ECF No. 2), the issuance of a writ of habeas corpus ad testificandum (ECF No. 3)

and a motion seeking the issuance of a writ of mandamus to compel the production of

Plaintiff's medical records (ECF No. 4).  In response to an order of the Court, Plaintiff

submitted the documentation required by the Prison Litigation Reform Act ("PLRA"), 28

U.S.C. §§ 1915(a)-(b).  (ECF Nos. 6, 7 & 11).[1]  On November 26, 2014, the Court issued an

_____

        [1] The order also directed Plaintiff to file page 7 of the complaint (*id.* at 3), which he did
on November 20, 2014 (ECF No. 8).

order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the PLRA. (ECF No. 12.)[2] The Clerk shall record the Defendants as Christi Gregory, Amanda Phillips, NWCX Warden Michael Parris, and the TDOC.[3]

Plaintiff has filed a motion seeking the issuance of a writ of habeas corpus ad testificandum compelling his attendance at all hearings in this matter. (ECF No. 3.) No hearing is necessary at this time; therefore, the motion is DENIED as unnecessary. If a hearing is required, the Court will issue a writ to secure Plaintiff's attendance without the filing of a motion.

Plaintiff also seeks the issuance of a writ of mandamus to compel the production of his medical records. (ECF No. 4.) Any discovery in this matter will be conducted in accordance with Rules 26 through 37 of the Federal Rules of Civil Procedure. Those Rules

---

[2] The complaint lists Crystal A. Douglas as an alternate plaintiff. (*See* ECF No. 1 at 1.) However, the complaint contains no factual allegations about Crystal A. Douglas, and Crystal A. Douglas has not submitted either an *in forma pauperis* affidavit or the civil filing fee. An attachment to the original *in forma pauperis* motion, titled "Plaintiff's Verification," makes clear that Crystal A. Douglas is to be substituted as a party only in the event of the death of Jeffery G. Douglas. (ECF No. 2 at 3.) Because Crystal A. Douglas is not claiming any right to relief at present, the Clerk is directed to modify the docket to terminate her as a party to this action. The sole plaintiff is Jeffery G. Douglas.

[3] The Court construes the allegations against the "Northwest Correction Complex, Site II Medical Clinic ('N.W.C.X.')" as an attempt to assert a claim against the TDOC, which operates the NWCX and is also a named party.

The complaint also purports to sue unidentified "N.W.C.X. Medical Staff" and an unidentified "N.W.C.X. Contracted Medical Doctor." (ECF No. 1 at 1.) Service of process cannot be made on an unidentified party. The filing of a complaint against such "John Doe" defendants does not toll the running of the statute of limitation against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Thus, if Plaintiff seeks to sue any other individual or entity, he must identify the defendant and seek leave to amend within the applicable statute of limitations.

contemplate that the parties will cooperate in discovery and will seek the assistance of the Court only if a dispute arises that cannot be resolved. Plaintiff's request for his medical records is premature because the Court has not screened the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and has not ordered that any Defendant be served. The motion is DENIED.

Plaintiff's complaint, which consists of an eleven-page complaint and eleven exhibits, numbered A through K, is difficult to decipher because the factual allegations are not presented in a coherent manner. Instead, the text of the complaint presents the standards for evaluating an Eighth Amendment claim of deliberate indifference to a serious medical need. The filing contains few factual allegations. (ECF No. 1 at PageID 6-7.) Prior to his incarceration in 2010, Plaintiff had experienced kidney failure. (ECF No. 8.) He avers that "Staff never said anything about until approximately Two (2) years into incarceration and again Two (2) years later being in August of 2014 . . . ." (*Id.*) According to an unsworn statement by Plaintiff, which is attached to the complaint as Exhibit I, "Northwest some time, around this time, or earlier, tested the same, 'Chronic Kidney Failure', in 2012. However, Northwest has 'Hence,' 'Refused to Properly Medicate' for the diagnoses." (ECF No. 1-9 at PageID 33 (emphasis omitted).)[4] Also in that statement, Plaintiff asserts that, in August 2014, "[t]he allegedly Doctor" met with him to discuss treatment options. The doctor wanted

---

[4] This document is not an affidavit because it was not signed under penalty of perjury.

to transfer Plaintiff to another facility for treatment. Although Plaintiff does not explicitly

say so, it appears that he objected to a transfer. (*Id.*) Plaintiff asserts that

> [t]he allegedly doctor had the inmate patient to sign an "AMA" (what ever that is) shifting the burden to the patient, "instead of treatment" for that failure.
>
> Inmate Patient later, after the signing of that August 2014 "AMA" revoked that "AMA" because it is the responsibility of N.W.C.X. to properly treat a patient.

(*Id.* (emphasis omitted); *see also* ECF No. 8 (same).)[5]

Plaintiff's statement also says that his condition causes his breath to sometimes have

an "uncontrollable order [sic]," which presumably means a bad odor. (ECF No. 1-9 at

PageID 33.) As a result, Plaintiff has experienced harassment from some staff members and

inmates. (*Id.*) Plaintiff was issued a write-up and lost his job in the prison kitchen. (ECF

No. 8.)[6] On August 14, 2014, Plaintiff filed a grievance against Inmate Relations

Coordinator Stacy Leake, who is not a party to this action, for allegedly behaving

unprofessionally by placing her hand over her mouth and making a gagging gesture in

response to Plaintiff's odor. (ECF No. 8; ECF No. 1 at PageID 7.) That grievance was

resolved adversely to Plaintiff. (ECF No. 1 at PageID 7.) Plaintiff also complains that the

NWCX serves drinks that use sodium saccharin as an artificial sweetener. (*Id.* at PageID 6.)

Plaintiff "believes that the named above products may be causing the hence condition along

---

[5] "AMA" means "against medical advice."

[6] As support, Plaintiff has filed a copy of part of a complaint he filed in 2013 in the Circuit Court for Lake County, Tennessee. (*Douglas v. Burton,* No. 13-cv-483 (Lake Cnty. Circ. Ct.), ECF No. 1-10.) That filing alleges that Plaintiff lost his job in 2012 because of his body odor.

with the deliberate indifference to a prisoner's Serious Medical Needs being ignored by Medical Staff at N.W.C.X." (*Id.*)

The prayer for relief does not specify the nature of the relief that Plaintiff seeks. (ECF No. 1 at PageID 11.) He aks for the "relief that is applicable and/or necessary to perform the mandatory duties of the Court, Local Constitution, State Constitution, United States Constitution and the laws thereof." (*Id.* (emphasis omitted).)

Since the filing of his complaint, Plaintiff has submitted additional exhibits and other documents that presumably are intended as amendments to the complaint. Those exhibits are intended to supplement, rather than to supersede, the original complaint. On November 20, 2014, Plaintiff submitted a document, titled "Additional Pleading to Original Filing," that addressed the legal standards for evaluating his claims. (ECF No. 9.) On November 25, 2014, Plaintiff submitted Exhibit L to his complaint, consisting of his affidavit that was sworn to on September 21, 2012. (ECF No. 10.)

On December 15, 2014, Plaintiff submitted Exhibits N, O and P to his complaint.[7] Exhibit N is another copy of Exhibit I, Plaintiff's unsworn statement dated August 30, 2014. (ECF No. 13.) Exhibit O, titled "AMA Notice by Christi Gregory, RN/DON," is a notice to inmates who sign up for sick call and then decide they do not want to be seen. (ECF No. 13-1.) Exhibit P consists of documents pertaining to a write-up Plaintiff received on December 25, 2012, for arriving to work with a bad odor and in dirty clothing. (ECF No.

---

[7] There apparently is no Exhibit M.

13-2.)[8]  On January 30, 2015, Plaintiff filed Exhibits Q and R to his complaint.  Exhibit Q consists of an information request, dated January 12, 2015, that received a response on January 15, 2015.  (ECF No. 16.)  Exhibit R consists of a letter to Plaintiff, dated January 6, 2015, from the Tennessee Department of Health in response to the letter to Mike Gaines. (ECF No. 16 at PageID 123-125.)  The significance of Exhibits Q and R is not explained. On February 4, 2015, Plaintiff filed Exhibits I and J.[9]  The new Exhibit I is a set of documents pertaining to a grievance Plaintiff filed in late 2014.  (ECF No. 17.)  The new Exhibit J is a collection of documents about a grievance another inmate filed pertaining to the alleged early closing of the medication line.  (ECF No. 17-1.)  The complaint contains no factual allegations about new Exhibits I and J.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

---

[8] On December 31, 2014, the Clerk docketed a copy of a letter from Plaintiff to Mike Gaines, the Director of Compliance of an unidentified agency.  (ECF No. 14.)  Because that document is not identified as an amendment or motion, it will be disregarded.

On January 2, 2015, the Clerk docketed a submission from Plaintiff, titled "Interference with Legal Mail," in which he complains that NWCX officials had refused to provide the postage for his letter to Gaines, a letter to Prison Legal News, and a letter to Administrative Services, because they were not considered to be legal mail.  (ECF No. 15.)  This submission also will be disregarded because it is not in the form of an amendment to the complaint or a motion.

[9] These exhibits are different from the Exhibits I and J that were included with the original complaint.

> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out

the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Plaintiff's complaint does not comply with the Federal Rules of Civil Procedure. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(2)-(3). A complaint violates these provisions when it "is so verbose that the Court cannot identify with clarity the claim(s) of the pleader and adjudicate such claim(s) understandingly on the merits." *Harrell v. Dirs. of Bur. of Narcotics & Dangerous Drugs*, 70 F.R.D. 444, 446 (E.D. Tenn. 1975); *see also Flayter v. Wis. Dep't of Corr.*, 16 F. App'x 507, 509 (7th Cir. 2001) (dismissing 116-page complaint pursuant to Rule 8(a)(2)); *Vicom v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (criticizing district court for declining to dismiss amended complaint with prejudice pursuant to Rule 8(a) and noting that "[a] complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation); *Plymale v. Freeman*, No. 90-2202, 1991 WL 54882, at *1 (6th Cir. Apr. 12, 1991) (district court did not abuse its discretion in dismissing with prejudice "rambling" 119-page complaint containing nonsensical claims); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) ("A . . . complaint must be presented

with intelligibility sufficient for a court or opposing party to understand whether a valid claim is presented and if so what it is. And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding." (citations omitted)); *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438-39 (8th Cir. 1983) (per curiam) (affirming dismissal of 98-page complaint where "[t]he style and prolixity of these pleadings would have made an orderly trial impossible"); *Gordon v. Green*, 602 F.2d 743, 744-45 (5th Cir. 1979) (4000-page pleading, comprised of "various complaints, amendments, amended amendments, amendments to amended amendments, and other related papers," did not comply with Rule 8(a) "as a matter of law"); *Windsor v. A Fed. Exec. Agency*, 614 F. Supp. 1255, 1257 (M.D. Tenn. 1983) (ordering plaintiff to amend his complaint to comply with Rule 8 because a 47-page complaint is not required to state a simple claim and because the complaint "is confusing and distracting").

Plaintiff's complaint does not allege sufficient facts to state a colorable claim against any Defendant. It is not reasonable to expect the Court and opposing parties to sift through numerous exhibits to discern the substance of Plaintiff's claims. *Septer v. Warden, Hocking Corr. Facility*, No. 2:12-CV-1209, 2013 WL 4456043, at *2 (S.D. Ohio Aug. 26, 2013) ("[I]t is the plaintiff's job, and not the Court's, to sift through his various grievances and both to decide, and plead with some level of specificity, what claims he intends to assert against what defendants."); *Mobley v. Warden London Corr. Inst.*, No. 2:09-cv-639, 2010 WL 518033, at *1 (S.D. Ohio Feb. 1, 2010) (form complaint accompanied by many inmate grievances "do[es] not constitute a proper complaint"). It also is not necessary for a complaint to

contain legal argument and case citations.  Finally, the complaint does not specify the nature of the relief sought by Plaintiff.

To state a claim under 42 U.S.C. § 1983,[10] a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  By its terms, § 1983 does not provide a cause of action for violations of the Tennessee Constitution or Tennessee law.  Although one of the attachments to the complaint consists of an excerpt from a TDOC policy (ECF No. 1-11), alleged violations of TDOC policy are not actionable under § 1983.  *See Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).[11]

_____

[10] Section 1983 provides:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[11] In *Levine*, 986 F.2d at 1515, a habeas case, the Court of Appeals stated that "[a] state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."

The Tennessee Court of Appeals has held that there is no private right of action for damages under the Tennessee Constitution. *See Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 444-45 (Tenn. Ct. App. 1999), *perm. app. denied* (Tenn. Feb. 14, 2000); *Lee v. Ladd*, 834 S.W.2d 323, 324-25 (Tenn. Ct. App. Mar. 4, 1992). The Sixth Circuit has held the same. *See Cline v. Rogers*, 87 F.3d 176, 179-80 (6th Cir. 1996); *see also Peterson v. Dean*, No. 3:09-cv-628, 2009 WL 3517542, at *1 (M.D. Tenn. Oct. 23, 2009) ("Tennessee does not allow for a private right of action for damages based on violations of the Tennessee Constitution" (emphasis omitted)); *Alexander v. Beale Street Blues Co.*, 108 F. Supp. 2d 934, 945 (W.D. Tenn. 1999).

Plaintiff cannot sue the TDOC under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit

against a State." (citations omitted)).  By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought.  *Pennhurst*, 465 U.S. at 100-01.  Tennessee has not waived its sovereign immunity.  Tenn. Code Ann. § 20-13-102(a).  Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983.  *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Court DISMISSES Plaintiff's claims against the TDOC pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

The complaint contains no factual allegations against Defendant Parris, the NWCX Warden.  When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  The only allegation against Defendant Phillips, the NWCX Health Administrator, was that she advised Plaintiff that someone he believed was a doctor was not.  (ECF No. 8.)  There is no allegation that Defendant Phillips violated Plaintiff's rights under the United States Constitution.

The nature of Plaintiff's claims against Defendant Gregory, the Director of Nursing at the NWCX, is unclear.  The only mentions of Gregory in Plaintiff's complaint and its attachments refer to her responses to Plaintiff's information requests.  (*Id.*; *see also* ECF Nos. 1-6 & 1-7.)  These documents do not state a facially plausible claim for relief.

Defendants Gregory, Phillips and Parris cannot be held liable because of their respective positions as Director of Nursing, Health Administrator and NWCX Warden.  Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."

*Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The amended complaint does not allege that Defendants Gregory, Phillips and Parris had any personal involvement in Plaintiff's treatment.

Many of the allegations in Plaintiff's complaint do not involve any named Defendant, including the claims arising from the failure properly to treat his chronic kidney failure, a doctor's recommendation that he be transferred to another facility for treatment, his loss of a prison job and the alleged harassment by staff and inmates because of his body odor, and the use of artificial sweeteners in drinks served to inmates. Because Plaintiff cannot sue the TDOC, he must identify and name as a defendant the specific person or persons responsible for violating his rights under the United States Constitution.

Portions of Plaintiff's complaint are time barred, including his claim arising from the loss of his prison job. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a)(3). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986). The running of the limitations period is tolled while a prisoner exhausts his administrative remedies. *Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Plaintiff's injury occurred on or about December 25, 2012, when the write-up was issued and he was recommended for termination. This action was commenced almost two years later, making the claim untimely.[12]

Plaintiff is not entitled to insist that he be treated at the NWCX. Inmates do not have a liberty interest in their prison assignments. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (Due

_____

[12] Plaintiff has also filed a lawsuit in state court arising from his termination from his prison job. (ECF No. 1-10.) If judgment has entered in that action, Plaintiff's claims about the loss of his prison job will likely be barred by claim preclusion or issue preclusion.

Process Clause not implicated by assignment of prisoner to any prison within a state or by transfer to another institution); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976) (inmate had no liberty interest in "remain[ing] at any particular prison and no justifiable expectation that he would not be transferred unless found guilty of misconduct"); *Newell v. Brown*, 981 F.2d 880, 883 (6th Cir. 1992) (federal law does not create any liberty interest that would allow a state prisoner to avoid a reclassification and transfer to a close security prison); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986) ("A prisoner has no inherent constitutional right to be housed in a particular institution or to enjoy a particular security classification." (citations omitted)). The United States Constitution does not require the NWCX medical staff to administer the necessary treatment for Plaintiff's condition at that facility.

"The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under

an obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). Alternatively, where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (internal quotation marks and alteration omitted); *see also Santiago*, 734 F.3d at 591 ("In a case like this, involving a claim based on the prison's failure to treat a condition adequately, medical proof is necessary to assess whether the delay caused a serious medical injury." (internal quotation marks omitted)). "The 'verifying medical evidence' requirement is relevant [only] to those claims involving minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore,* 390 F.3d at 898. The Court will assume, for

purposes of this order, that Plaintiff suffered from a serious medical need during his incarceration at the NWCX.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d 703 (quoting *Farmer*, 511 U.S. at 836). "A medical decision not to order an X-ray, or like measures, does not represent cruel or unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle*, 429 U.S. at 107.

The complaint does not allege that any member of the NWCX medical staff was deliberately indifferent to Plaintiff's needs. The complaint does not describe any specific

actions that any particular staff member took or failed to take with respect to Plaintiff's care. At most, the complaint appears to allege a failure to treat Plaintiff's condition properly, which amounts to negligence. There is no allegation that any member of the medical staff was aware of the seriousness of Plaintiff's condition and recklessly disregarded that risk.

Therefore, Plaintiff's complaint is DISMISSED for failure to state a claim on which relief may be granted, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 511 F. App'x at 5; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a

meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

The Court cannot conclude that any amendment to Plaintiff's complaint against the individual Defendants would be futile as a matter of law. Therefore, leave to amend is GRANTED. Any amendment must be filed within twenty-eight (28) days after the date of this order.

Plaintiff is advised that an amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleading. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Plaintiff may add additional defendants provided that the claims against the new parties arise from the acts and omissions in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Plaintiff fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE